**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**CHARISMA LEE R. on behalf of J.R.N.R.,**

                                **Plaintiff,**                                **19-CV-1092Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                                **Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #16.

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), with the Social Security Administration ("SSA"), on December 23, 2014, when the child was four, alleging disability beginning from his date of birth in October of 2010, due to hearing loss, speech delay and behavioral issues. Dkt. #6, pp.21 & 160.

On October 30, 2017, plaintiff appeared with the child and counsel and testified at an administrative hearing before Administrative Law Judge ("ALJ"), Michael

Carr. Dkt. #6, pp.39-68. Plaintiff testified that the child, age 7, lived with her and two younger brothers, age 4 and 3. Dkt. #6, pp.46-47. The child was in a blended second grade classroom with 26 students and 3 teachers. Dkt. #6, pp.47 & 51. He missed 28 days of instruction in first grade, where he was in an 8:1:1 classroom, because of illness and lack of transportation. Dkt. #6, pp.48-51. He is no longer subject to an Individualized Education Plain ("IEP") or seeing a counselor or speech therapist. Dkt. #6, pp.50-51 & 53. Plaintiff was attempting to reinstate special education services, which she believed were withdrawn because of attendance issues. Dkt. #6, pp.48 & 51-52. She reported that the child was receiving excellent grades when he was receiving special education services and that his speech had gotten a lot better. Dkt. #6, pp.64-65. However, plaintiff testified that the child was unable to independently complete his school work and was currently failing. Dkt. #6, p.54.

Plaintiff testified that the child's grandmother, who is a counselor, worked with the child about 6 hours per week and that plaintiff assisted the child with homework. Dkt. #6, pp.54-55. She stated that the child does pretty well with math homework, but cannot read. Dkt. #6, pp.55 & 59. He does not understand and is unable to complete his homework without plaintiff telling him what to write. Dkt. #6, p.58. He loses focus and requires redirection and constant supervision. Dkt. #6, pp.59-61. He does not take medication for his diagnosis of attention deficit hyperactivity disorder ("ADHD"). Dkt. #6, p.56. He has friends and is getting along better with his classmates this year. Dkt. #6, pp.61-62.

The ALJ rendered a decision that plaintiff was not disabled on October 2, 2018. Dkt. #6, pp.15-33. The Appeals Council denied review on June 20, 2019. Dkt. #6, p.4. Plaintiff commenced this action seeking review of the Commissioner's final decision on August 19, 2019. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

An individual under the age of 18 will be considered disabled under the Social Security Act ("Act"), if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations and can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). The

Commissioner must follow a three-step sequential evaluation to determine whether a child is disabled within the meaning of the Act. 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaging in substantial gainful activity. 20 C.F.R. § 416.924(a) & (b). If not, the ALJ proceeds to step two and determines whether the child has an impairment or combination of impairments that is severe, *i.e.*, causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). If the ALJ finds a severe impairment or combination of impairments, the ALJ proceeds to step three and examines whether the child's impairment or combination of impairments meets or equals, either medically or functionally, the criteria of a listed impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 416.924(d).

To evaluate functional equivalence, the ALJ considers how the child functions in the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must cause marked limitations in two domains or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a). A child has a marked limitation when the impairment or combination of impairments interferes seriously with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926(e)(2)(i). A child has an extreme limitation when the impairment or combination of impairments interferes very seriously with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926(e)(3)(i).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) the child had not engaged in substantial gainful activity since the application date of December 23, 2014; (2) the child's hearing loss in the left ear, ADHD, moderate receptive delay and mild expressive delay constitute severe impairments; and (3) the child's impairments did not meet or equal any listed impairment and the child was not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp.21-33. More specifically, the ALJ determined that the child exhibited: (1) less than marked limitation in acquiring and using information; (2) less than marked limitation in attending and completing tasks; (3) marked limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) less than marked limitation in ability to care for himself; and (6) less than marked limitation in health and physical well-being. Dkt. #6, pp. 26-33.

Plaintiff argues that the ALJ failed to assign weight to the teacher questionnaires completed by Crystal Alley and Jennifer Zalonski or explain how he reconciled their non-medical source assessments with his determination of less than marked limitation in acquiring and using information and attending and completing tasks. Dkt. #11-1, pp.12-15.  Plaintiff also argues that the ALJ erred in emphasizing cognitive testing over academic performance, which clearly demonstrated a marked limitation in acquiring and using information. Dkt. #11-1, pp.16-19. Similarly, plaintiff argues that the ALJ erred in emphasizing the child's attention during a single consultative examination rather than the longitudinal evidence provided by his teachers. Dkt. #11-1, pp.19-23.

The Commissioner responds that the ALJ appropriately considered the results of cognitive testing, the child's improvement in academic functioning, discontinuation of counseling and speech therapy, and lack of medical treatment in determining a less than marked limitation in acquiring and using information and attending and completing tasks. Dkt. #14-1, pp.13-18. The Commissioner also notes that a teacher's assessment of serious or even very serious problems do not equate to marked or extreme limitations as defined within the Social Security regulations. Dkt. #14-1, pp.16-17. The Commissioner argues that the ALJ clearly considered the teachers' opinions, which were not inconsistent with the ALJ's determination. Dkt. #14-1, pp.17-18.

Plaintiff replies that the ALJ did not sufficiently explain why the serious and very serious problems identified by the child's teachers did not warrant a finding of marked limitation in the domains of acquiring and using information and attending and completing tasks. Dkt. #15, pp.2-6.

Although teachers are not medical sources and their opinions cannot establish the existence of a medically determinable impairment, the ALJ is permitted to consider information provided by such other sources and weigh their opinions regarding a child's limitations and functioning. SSR 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006). Given their close interaction with students on a regular basis, teachers are considered valuable sources of evidence for assessing the severity of a child's impairment and it's affect on the child's ability to function. *Id.* In assessing the weight to

afford such opinions, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03P, 2006 WL 2329939, at *5.

Opinions from such other non-medical sources may outweigh the opinion of a medical source if the non-medical source has seen the individual more often, has greater knowledge of the individual's functioning over time, or if the non-medical source's opinion has better supporting evidence and is more consistent with the evidence as a whole. *Conlin ex. rel. N.T.C.B. v. Colvin*, 111 F. Supp.3d 376, 388 (W.D.N.Y. 2015). An ALJ has full discretion to determine the appropriate weight to accord such "other source" opinions based upon all the evidence. *Id.* at 387. However, the ALJ should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence allows review of the ALJ's reasoning. *Nivia D. o.b.o. P.L.D. v. Comm'r of Soc. Sec.*, 5:18-CV-634, 2019 WL 4563262, at *5 (N.D.N.Y. Sept. 20, 2019).

<u>Interacting and Relating with Others</u>

Jennifer Zalonski, a general education pre-K teacher, completed a Teacher Questionnaire on February 17, 2015 based upon her interaction with the child in pre-kindergarten beginning in September of 2014. Dkt. #6, p.208. Ms. Zalonski noted

very serious problems in a number of specified areas relevant to interacting and relating

with others, including seeking attention appropriately, expressing anger appropriately,

asking permission appropriately, following rules, and respecting adults in authority. Dkt.

#6, p.211. She noted numerous unsuccessful behavior modification strategies and

explained that the child frequently needed to be removed from group situations

because of his aggressive, defiant behavior and the threat he poses to other children.

Dkt. #6, p.211. She also noted very serious problems handling frustration appropriately,

using good judgment, identifying and appropriately asserting emotional needs,

responding appropriately to changes in mood, using appropriate coping skills to meet

daily demands of the school environment, and knowing when to ask for help. Dkt. #6,

p.213. Ms. Zalonski reported that although the child had previously been able to take

care of his wants and needs without assistance, he had recently been exhibiting violent

and unexplainable behavior and requiring more structuring, time, and teacher

assistance to complete prompts. Dkt. #6, p.215. She opined that his behavioral issues

were beginning to affect his academic progress. Dkt. #6, p.215. Crystal Alley, a Special

Education Teacher, completed a Request for Administrative Information Form indicating

that a counseling amendment meeting had been scheduled to address extreme

behavior concerns. Dkt. #6, p.217. The ALJ referenced these opinions, as well as the

child's IEP report, in consideration of the functional domain of interacting and relating

with others, an area in which he determined the child suffered a marked limitation. Dkt.

#6, p.30.

<u>Acquiring and Using Information</u>

Ms. Zalonski opined that the child had no problem in any of the specified areas relevant to acquiring and using information except with respect to comprehending oral instructions, which she rated a slight problem. Dkt. #6, p.209. The ALJ referenced these opinions in consideration of the functional domain of acquiring and using information. Dkt. #6, p.28. The ALJ also referenced the parent's reports of the child's abilities and the consultative examiner's recording of a full scale IQ score of 91, placing the child in the average range of ability, and a full scale IQ score of 76 recorded in 2017. Dkt. #6, p.28. This is sufficient to support the ALJ's determination of less than a marked limitation in this functional domain.

While plaintiff focuses on the child's demonstrated delays with receptive and expressive language skills, the ALJ gave substantial weight to the opinion of consultative speech and language pathologist, Amy Atwater, that the child had a "moderate receptive language delay, mild expressive language delay, and articulation skills within functional limits." Dkt. #6, p.474. The ALJ also afforded substantial weight to the opinions of state agency pediatric consultant, Dr. Bostic and psychological consultant, Dr. Bruni, that the child would have no limitation in acquiring and using information. Dkt. #6, p.6. "It is well settled that an ALJ is entitled to rely upon the opinions of the State Agency's medical and psychological consultants, since they are qualified experts in the field of Social Security disability." *Conlin*, 111 F. Supp.3d at 387 (internal quotation omitted). "As qualified experts in the evaluation of medical issues in social security disability claims, State Agency physicians' opinions may constitute

substantial evidence . . . and may be relied upon if they are consistent with the record as a whole. *Id.* (internal citations omitted).

Contrary to plaintiff's argument, the ALJ did consider educational records, including psychological testing, and acknowledged the child's IEP and supportive classroom settings. Dkt. #6, pp.25-26. The Court notes that the child's IEP references "mild overall cognitive delays" and indicates that the child had been "making slow progress towards his academic goals" before regressing "[f]ollowing many school absences and an extended winter break." Dkt. #6, pp.249 & 257-258. Ms. Zalonski also noted that the child had missed a great deal of school from November through January due to illness and family issues. Dkt. #6, p.208.

Attend and Complete Tasks

With respect to attending and completing tasks, Ms. Zalonski opined that the child had a very serious problem changing from one activity to another without being disruptive and working without distracting self or others. Dkt. #6, p.210. She further opined that plaintiff had an obvious problem focusing long enough to finish assigned activities or tasks; refocusing to task when necessary; and working at a reasonable pace/finishing on time. Dkt. #6, p.210. She explained that the child

> is able to complete tasks when he feels like it. Most of the time he needs a great deal of teacher support and assistance for simple tasks due to aggressive behaviors when left unsupervised.

Dkt. #6, p.210. The ALJ referenced these opinions in consideration of the functional domain of attending and completing tasks. Dkt. #6, p.210. However, a teacher's

assessment of a serious or very serious problem in a particular skill area in a domain of functioning does not necessarily equate with a marked limitation. *Christina B. v. Comm'r of Soc. Sec.,* 5:19-CV-1192, 2020 WL 5848732, at *8 (N.D.N.Y. Oct. 1, 2020); *White o/b/o T.R.W. v. Berryhill*, 17-CV-6367, 2019 WL 1367382, at *5 (W.D.N.Y. March 26, 2019); S*pruill v. Astrue*, 6:12-CV-6060, 2013 WL 885739, at * 8 (W.D.N.Y. March 8, 2013). In addition, the ALJ appropriately relied upon the opinion of the consultative examiner, Dr. Santarpia, that plaintiff presents as able to attend to, follow and understand age-appropriate directions and complete age-appropriate tasks. Dkt. #6, pp. 26, 29 & 480. Although not specifically referenced within the discussion of the functional domain of attend and complete tasks, the ALJ also afforded substantial weight to the opinions of state agency pediatric consultant, Dr. Bostic and psychological consultant, Dr. Bruni, that the child would have less than a marked limitation in this functional domain. Dkt. #6, p.26. This is sufficient to support the ALJ's determination of less than a marked limitation in the child's ability to attend and complete tasks.

Although plaintiff emphasizes the child's need for constant supervision, the record suggests that this concern correlates more significantly with the child's behavioral issues, which the ALJ accounted for in his determination of a marked limitation in interacting and relating with others. For example, as set forth above, Ms. Zalonski linked the need for teacher support and assistance to aggressive behaviors when left unsupervised. Dkt. #6, p.210. More specifically, the child's IEP indicates that following multiple school absences, the child's behavior drastically changed and the child "requires full support, eyes on attention, and to be within close proximity to an

adult at all times throughout his school day" because he "lashes out, both physically and vocally, on peers and adults" and "will physically lash out at peers for no apparent reason other than attention." Dkt. #6, p.258.

As the ALJ's decision demonstrates that the ALJ fairly considered the evidence in the record, including the child's educational record, and appropriately weighed the opinion evidence, including that of the child's teachers, in reaching his determination as to the child's functional capacity, the Court concludes that the ALJ's determination that the child does not functionally equal the Listings is based upon substantial evidence.

**CONCLUSION**

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #11), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #14), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**      **Buffalo, New York**
**March 31, 2021**

                                          **s/ H. Kenneth Schroeder, Jr.**
                                          **H. KENNETH SCHROEDER, JR.**
                                          **United States Magistrate Judge**